**COMMISSIONER OF INTERNAL REVENUE v. HOLMES' ESTATE et al.**

**No. 11206.**

Circuit Court of Appeals, Fifth Circuit.

April 14, 1945.

Hilbert P. Zarky, Sewall Key, and A. F. Prescott, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John T. Rogers, Sp. Atty., Bureau of Internal Revenue, both of Washington, D.C., for petitioner.

J. E. Price, of Houston, Tex., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is an estate tax case involving the question whether the settlor of an irrevocable trust reserved powers enabling him to change in enjoyment the interests created thereby, so that, upon his death without having exercised such powers, a taxable interest passed from him.

On January 20, 1935, Harry Holmes transferred 30 shares of stock to himself, as trustee, for the benefit of his three sons. The instrument set up three trusts, which were identical in terms. They were for a period of 15 years, unless terminated earlier by the trustee or trustees. The settlor was the trustee of each trust, with provision that, upon his death or resignation prior to the termination of the trusts, such of his sons as had then attained their majority or had their disabilities of minority removed should become joint trustees.

Each trust named as beneficiary one son, who was to receive the income therefrom during the life of the trust and the corpus upon termination thereof. If any son should die during the continuance of the trust, the beneficial interests would pass to his surviving issue, share and share alike, subject to distribution when such beneficiary or beneficiaries became 21 years of age. If any son died leaving no issue, or if his surviving issue died before becoming 21 years of age, his interest passed to his surviving brother or brothers or, if they were both dead, to their surviving issue per stirpes. If all three sons died without issue prior to termination, the

whole of the trust properties then remaining passed to the settlor's wife, if living, or to her heirs at law.

The trusts provided that the trustee should distribute the net income from each trust to the beneficiary in convenient monthly installments, but that the trustee, if he deemed it to the best interest of the beneficiary, could without distribution of any portion of the net income, accumulate it, and turn it over to the beneficiary with the corpus upon termination of the trust. The trustee was empowered to use trust corpus when necessary or advisable for the maintenance, welfare, or happiness of the beneficiary; he could distribute said principal in whole or in part whenever he deemed it advisable, or could terminate the trusts, in which event the corpus would be distributed to the persons entitled thereto on the date of termination.

Harry Holmes acted as trustee of the trusts, and did not terminate them prior to his death on October 5, 1940. His executrix did not include in the estate tax return any of the property that had been transferred to the trusts. The Commissioner, claiming that the trust property should have been included in the trust estate, assessed a deficiency. The Tax Court held that the property was not includible in the gross estate of the decedent, and the Commissioner appealed. His contention is that the reservation by the decedent of the power to terminate the trusts at will enabled him to give to the then existing beneficiaries complete ownership of the trust corpus, and thereby to extinguish all contingent interests; and that the relinquishment of this power by the decedent at death was the first complete transfer of the grantor's control over the enjoyment of the trust benefits.

The applicable statute is Section 811(d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(d), which relates to revocable transfers. Subsection (1) thereof provides that the value of the gross estate of a decedent for estate tax purposes shall include the value of all property to the extent of any interest therein of which the decedent has made a transfer in trust after June 22, 1936 (except bona fide sales for an adequate consideration), where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power by the decedent to alter, amend, revoke, or terminate. Subsection (2) thereof provides that with respect to transfers on or prior to June 22, 1936, any interest so transferred is includible where the enjoyment thereof was subject, at the date of decedent's death, to any change through the exercise of a power by the decedent to alter, amend, or revoke. As the present trusts were created prior to June 22, 1936, Subsection (2) of the statute, which does not expressly mention a power to terminate, is controlling in this case.

This portion of the statute was included in the Revenue Act of 1924 and each succeeding act as Section 302(d) thereof, and has been frequently before the courts. Fifteen years after its first enactment, Mr. Justice Stone, in the case of Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 60 S.Ct. 51, 56, 84 L. Ed. 20, reviewed the decisions of the court involving the statute, and summarized as follows: "The rule was thus established, and has ever since been consistently followed by the Court, that a transfer of property upon trust, with power reserved to the donor either to revoke it and recapture the trust property or to modify its terms so as to designate new beneficiaries other than himself is incomplete, and becomes complete so as to subject the transfer to death taxes only on relinquishment of the power at death." Since the reservation in the present case did not empower the donor either to revoke the trust instrument and recapture the trust property, or to modify the terms of that instrument so as to designate new beneficiaries or in any other manner change the fixed provisions thereof, it is patent that the Commissioner is now seeking to extend the rule beyond the bounds long established.

The Commissioner argues that the words "alter, amend, or revoke" should always have been construed to include the power to terminate, and that the addition of the word "terminate" in the 1936 act added nothing of substance to the statute, but was only declaratory of the existing law. This view is based upon the report issued by the Ways and Means Committee in connection with the enactment of the 1936 law, which report read in part as follows: "In the case of White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, the Supreme Court did not pass on the question whether the power to terminate was included in the language relating to a power 'to alter, amend, or revoke.' Since in substance a power to terminate is the equivalent of a

power to revoke, this question should be set at rest. Express provision to that effect has been made and it is believed to be declaratory of existing law."

We do not consider this report helpful to the Commissioner here. It is at once apparent that the word "terminate," if used to mean the same thing as "revoke," adds nothing of substance to the statute. In any case where the grantor retains a power called a power to terminate, but where the power when exercised is the equivalent of a revocation, the trust res should be included in the estate of the grantor under either provision of the statute. It may also be true that the power to terminate a trust is ordinarily the equivalent of a power to revoke, for in many instances the trust instrument conveys property for the life of the trust only, without any conveyance over of the res upon termination, and the effect of the termination is to nullify the grant and return the trust property to the grantor.

That the word was used in this restricted sense only is the interpretation given the statute by the Treasury. Section 81.20 of Treasury Regulations 105 provides: "Such addition is considered but declaratory of the meaning of the subdivision prior to the amendment. A power to terminate capable of being so exercised as to revest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to inure to his benefit or the benefit of his estate, is, to that extent, the equivalent of a power to 'revoke.'"

Of critical importance in the case at bar is the fact that the trust instrument not only operated to convey the trust estate, but the instrument also provided that, if the decedent exercised his power as trustee to terminate the instrument, the ownership of the properties should vest in named beneficiaries other than the grantor. The power to terminate was not capable of being so exercised as to revest in the decedent any legal or beneficial title to any interest in the trust property, nor could it operate to empower the decedent to choose different beneficiaries from those named, or to alter the benefits received by them.

■ The Commissioner also relies upon the case of Mellon v. Driscoll, 3 Cir. 117 F. 2d 477, 480. The Tax Court thought that the Mellon case was distinguishable from this one on the facts. If it is not so distinguishable, then we decline to follow it. In that case the court reached its conclusion by holding, without citation of authority, that "revocation is but a method of bringing a trust to an untimely end and has no relation to the consequent and subsequent fate of the corpus." We prefer to ascribe to the word "revoke" the meaning attributed to it by dictionaries,[1] by the Regulations,[2] and by the courts generally;[3] namely, to annul or make void by recalling or taking back; to recall a grant. Indeed, in Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880, the contention was made that the phrase "alter, amend, or revoke" related only to such powers as were exercisable to revest the property conveyed in the grantor. The court disposed of this by saying that the words were used disjunctively, and that "alter" and "modify" were not used as equivalents of revoke, thus recognizing that a revocable transfer is one subject to being recalled by the transferor.

■ We agree with the Tax Court that the grantor did not have any power to alter, amend, or revoke, and that the trust properties were not includible in the gross estate. The decision appealed from is affirmed.

McCORD, Circuit Judge (dissenting).

This is an estate tax case which involves the question whether the trust from which it stems was irrevocable, or whether it falls within the inhibition of Section 811 (d) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(d) (2).

Where a grantor has attempted to dispose of his property by trust, such instrument

[1] Webster's New International Dictionary; Funk & Wagnall's New Standard Dictionary.

[2] Section 81.20 of Treasury Regulations 105, supra.

[3] Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 53 S.Ct. 451, 77 L. Ed. 880; Helvering v. Helmholz, 296 U. S. 93; Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20; Morton v. Commissioner of Internal Revenue, 7 Cir., 109 F.2d 47; Commissioner of Internal Revenue v. Branch, 1 Cir., 114 F.2d 985, 132 A.L.R. 839.

must show clearly that it is irrevocable and that grantor retains no interest in or control over such property as owner. It has been repeatedly held that if the reserve power of a grantor permits him, in any manner, to alter, amend, revoke or designate the interest of the beneficiaries named in the trust, it will be sufficient to cause the property to be included in the gross estate of such grantor. Union Trust Co. v. Driscoll, 3 Cir., 138 F.2d 152, certiorari denied 321 U.S. 764, 64 S.Ct. 521; Welch v. Terhune, 1 Cir., 126 F.2d 695, certiorari denied 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519; Mellon v. Driscoll, 3 Cir., 117 F.2d 477, certiorari denied 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536; Millard v. Maloney, 3 Cir., 121 F.2d 257, certiorari denied 314 U.S. 636, 62 S.Ct. 100, 86 L.Ed. 511.

Paragraphs four, eleven and thirteen of the trust instrument here under consideration makes it plain that the termination of the trust would accomplish much more than "to accelerate the time of its enjoyment"; that the corpus was not by the instrument "already given to the beneficiaries," but on the contrary, the grantor could "change or alter the disposition of the trust corpus" by transforming some contingent interests into absolute ownership and thereby destroy other contingent interests altogether.

While each of the three sons named as beneficiaries was given a present interest in the income from the trust, even that interest was not absolute. The grantor had the right as trustee to withhold income payments "should he determine it for the best interest of" the named beneficiaries. This, together with the spendthrift provisions, insured continuing control over the income by the grantor. Moreover, he reserved the right to terminate the trust at any time in his lifetime. If the trust were terminated in this manner, the corpus would be paid to the beneficiaries then entitled to it. Thus, by exercising his retained authority, the grantor could have changed the contingent interests of his three sons with respect to the corpus into rights of absolute ownership. By the same token, had he terminated the trust, he could have extinguished the contingent interests which each son had in his brothers' putative shares, the contingent interests which the issue, or potential issue, of each son would have, and also the contingent interest of the grantor's wife.

The grantor named himself trustee of the trust and administered the same until he died; and the instrument forbade the beneficiaries from pledging or alienating their interests until it came into their possession.

It becomes patent, I think, that this instrument does not measure to an irrevocable trust, but is a substitute for testamentary disposition, and opens the door to the makers of trust instruments through which they may escape gift, inheritance or estate taxes. Welch v. Terhune, 1 Cir., 126 F.2d 695.

The Tax Court has given to this instrument a crutch with which it is enabled to stand upright, whereas it should have been permitted to fall because of its weakness and defects.

I cannot bring myself to agree with my colleagues.