[Civ. Nos. 15119, 15120. Second Dist., Div. Three. June 11, 1946.]

Guardianship of the Person and Estate of DONNA MARIE KERNS, a Minor. RUBY LEABO, Appellant, v. MARGARET E. KELLY, Respondent.

Arthur A. Jones for Appellant.

Ira C. Doane and Everrett R. Peckham for Respondent.

SHINN, J.—Donna Marie Kerns, aged 8 years, is the daughter of Margaret E. Kelly, nee Margaret E. Kerns. Upon the petition of the mother, she was appointed guardian of the person, and Citizens National Trust and Savings Bank was appointed guardian of the estate of said minor. In the same proceeding the court denied a cross-petition of Ruby Leabo praying that she be appointed guardian of the person and estate of the minor. Ruby Leabo also filed with the superior court a petition to have the child declared free from the custody and control of her mother under the Juvenile Court Law, division 2, part I, chapter 2, article 6, Welfare and Institutions Code. Her petition was resisted by Mrs. Kelly and, after a trial, was denied. The guardianship proceeding was determined by Honorable John Gee Clark, and the abandonment proceeding by Honorable William B. McKesson, in the exercise of his jurisdiction as judge of the juvenile court. Ruby Leabo has appealed from the entire judgment made in the guardianship proceeding and also from the one in the abandonment proceeding. The appeals have been consolidated.

That portion of the judgment of Judge Clark which appointed the corporation guardian of the estate of the minor should be affirmed. The minor had an estate as beneficiary of

the will of one Grafton Leabo, no guardian of the estate had been appointed, the mother had petitioned for the appointment of the corporation, Ruby Leabo, a stranger, had petitioned for her own appointment, and the selection that was made was within the discretionary power of the court. Appellant in her brief states no reason for a reversal of that provision of the judgment.

The purpose of Ruby Leabo in prosecuting the proceeding in the juvenile court was to have the child freed from the custody and control of the mother so that she would be subject to adoption without the mother's consent. An extended hearing was conducted before Judge McKesson for the determination of a single question of fact, namely, whether the mother had abandoned her child and had thereby rendered the child subject to the jurisdiction of the juvenile court by virtue of section 701a of the Welfare and Institutions Code, which extends the jurisdiction to any child under 21 years of age "Who has been left by either or both of his parents in the care and custody of another without any provision for his support, or without communication from either or both of his parents, for the period of one year with the intent on the part of such parent or parents to abandon such person. Such failure to provide, or such failure to communicate for the period of one year, shall be presumptive evidence of the intent to abandon."

The law which governed in the guardianship matter heard by Judge Clark is section 1409 of the Probate Code, which reads: "A parent who knowingly or wilfully abandons or, having the ability so to do, fails to maintain his minor child under fourteen years of age, forfeits all right to the guardianship of such child; . . ." etc. The question of abandonment was involved in both hearings and the finding of each judge was in favor of the mother. Judge McKesson found: "That said natural mother did not fail to provide for or communicate with said minor for the period of one year with the intent to abandon said child," etc., and in the conclusions of law he further found: "That the natural mother, Margaret Elizabeth Kelly, did not abandon or intend to abandon her said minor daughter, Donna Marie Kerns, within the meaning of section 701a of the Welfare and Institutions Code, or otherwise or at all." Judge Clark found: "That said natural mother did not fail to provide for or communicate with said minor daughter for the period of one year with the intent to

abandon said minor. That said natural mother did not abandon said minor.'' However, no finding was made in the guardianship matter as to whether the mother had knowingly or wilfully failed to maintain the minor, having the ability so to do, which was a question for decision under section 1409, Probate Code. We have, then, two questions which necessitate a consideration of the evidence: First, was there evidence of a substantial character which furnished support for the two findings that there had been no abandonment and, second, was the failure to make a finding as to the alleged failure of the mother to support the child an error which necessitates a reversal of that portion of Judge Clark's judgment which appointed the mother guardian of the person of her child. These questions cannot be disposed of properly without a statement of the evidence, which consisted of a review of the mother's conduct and her circumstances, as well as the life of her daughter, from a date preceding the birth of the child.

In 1936, respondent, Margaret Kerns (Kelly), was 18 years of age and, with her younger sister, was visiting at Los Angeles, a family named Martin, friends of her own family. The father of the child was a son of the Martins, a young man who was employed and whose marriage to Margaret had been arranged. The baby was born in Denver; the mother returned to Los Angeles with her child, expecting to marry the baby's father, but the latter met his death in an accident before the marriage could take place. The mother went to work as a waitress, placed the child in good hands, and supported her. In 1937, while working in a restaurant owned by Grafton Leabo, she married him but thereafter continued to work and support the baby. The marriage was a mistake and the parties separated. The mother returned to Denver, but continued to support the daughter until September 14, 1938, when Leabo was granted letters of guardianship of the person of the minor by the Superior Court of Los Angeles. The mother at that time was ill and she continued under the care of physicians, being able to work only a part of the time, and then earning only $5.00 a week as a house servant. In 1939, Leabo, who had married Margaret without being finally divorced from a former wife, sued for and obtained an annulment of his marriage to Margaret. In 1940 Ruby entered the employ of Grafton Leabo as his housekeeper and in 1942 she married him. The child

lived with the Leabos until Grafton died, October 8, 1944. On October 11, 1944, Ruby filed a petition for her own appointment as guardian of the person of the minor, and on October 31, 1944, she filed a separate petition for her appointment as guardian of the estate. In the meantime, Margaret had married one Kelly, her present husband, who was then a W. P. A. worker. From December, 1941, until July, 1943, when he joined the Navy, Mr. Kelly held another position, in which he earned about $150 a month. The mother obtained employment in August, 1943, first at $15 a week, and other small wages, and later at about $135 a month, and thereafter she also received $50 a month of her husband's pay. While it does not appear with certainty what wages she received during the different periods, it is reasonably certain that during the greater part of the year immediately preceding the filing of her petition for guardianship she had the ability to contribute substantially to the support of the child. During all of the earlier years, while she was living in Denver, she was without ability to support the child, due largely to a serious illness.

Judge McKesson made comprehensive findings, all of which have support in the evidence. He found that prior to leaving for Colorado the mother had placed the child in the home of one Hildegarde Wenger and that the mother was supporting her and had made arrangements for the child to be returned to her; that in October, 1944, when Grafton Leabo was appointed guardian, the mother was in Denver, sick and without funds, but that she protested to the judge against Leabo's petition; that she did not thereafter attempt to have Leabo's appointment vacated because she suffered from lack of funds and feared the said Leabo, and that immediately upon learning of his death she sought her own appointment as guardian; that she did not fail to provide for or communicate with the child for a period of one year with intent to abandon the child; that she sent, or caused to be sent, Christmas presents, birthday and Easter presents each year, and that the same were received by the minor; that while he was guardian, Grafton Leabo took the child to Denver to see her mother and offered to give her back to her mother if the latter would return and live with him, but that she refused through fear of the said Leabo and asked for the return of the child; she received a series of photographs of the child which she cherished, and at least once a year, at the request of the mother, a cousin of the mother visited the child and reported as to the child's con-

dition, and the maternal grandmother, with whom the mother lived, corresponded with Leabo at least once a year and received replies, which she read to the child's mother, this continuing throughout the guardianship. It was found to be untrue, as alleged in the petition, that the mother left said minor in the care of said Ruby Leabo without support or communication, with intent to abandon said minor. The mother testified at great length in the hearing before Judge McKesson, and the testimony which she gave fully supported her own summarization, as follows: "I never have given up Donna. I have never abandoned her. I have always—I have been waiting for all these years just so I could have her, but I couldn't fight Mr. Leabo; there was just nothing I could do."

Our own study of the evidence satisfies us that the material conclusions reasonably to be drawn therefrom are the following: The child has always had a good home; at the time Grafton Leabo obtained letters of guardianship there existed an undissolved marriage relation with Margaret, and Leabo's assumption of the duty of supporting the child was voluntary and imposed upon the mother no legal duty to reimburse him for the child's support. The voluntary nature of that support was not thereafter altered by any request by Leabo that the mother contribute to the support of the child; the mother did not fail at any time in the performance of her legal duty to support the child; she did not neglect the child, nor ever lose affection for her nor show any lack of interest in her welfare. She believed at all times that her daughter would eventually be restored to her and she submitted to the arbitrary actions of Leabo because she did not know how to overcome the effect of the court order appointing the latter as guardian of the child; her continued separation from the child was not in accordance with her wishes, and her absence from Los Angeles, she testified, was due to her fear of Leabo. Promptly upon the death of Leabo, the mother asserted, and she has vigorously prosecuted, her right to the custody of her child. In short, her situation is due to extreme misfortune, and not to any failure in the performance of her legal or moral obligations, nor, in fact, to any culpable fault or neglect upon her part.

We do not see how the issue of abandonment could have been justly decided against the mother. As said in *Guardianship of Snowball*, 156 Cal. 240, 243 [104 P. 444], "In order to constitute abandonment 'there must be an actual desertion, ac-

companied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same.' '' To abandon means to give up a right absolutely with no intention of reclaiming it, and it must be shown by the clear, unequivocal and decisive act of the party. (*In re Kelly,* 25 Cal.App. 651, 658 [145 P. 156]; *In re Cordy,* 169 Cal. 150 [146 P. 532]; *Matter of Cozza,* 163 Cal. 514, 524 [126 P. 161, Ann.Cas. 1914A 214]; *In re Edwards,* 117 Cal.App. 667 [4 P.2d 560]; *Estate of Akers,* 184 Cal. 514 [194 P. 706].) Failure to provide or failure to communicate for a period of one year is only presumptive evidence of intention to abandon, under the Welfare and Institutions Code. Absence of any such intention was clearly established by the evidence in the hearing of the guardianship proceeding, as well as in the one held in the juvenile court.

A finding should have been made in the guardianship proceeding as to whether the mother had failed to maintain her daughter, within the meaning of section 1409 of the Probate Code. The omission to make such finding was error, but we are convinced that it was not an error which resulted in a miscarriage of justice or which requires a reversal for a retrial of that issue. The question is not merely whether the child was supported by the mother or by someone else. It is rather a question of what constitutes a wilful failure on the part of the parent. The provision of the section which would visit upon the parent the extreme penalty of forfeiture of the right to serve as guardian has for its purpose the protection of the child from neglect, and not the mere punishment of the parent. The failure to support a child, which is due to poverty or other misfortune not resulting from the wilful acts or omissions of the parent, does not deprive the parent of the right of custody or control or the right to serve as guardian. This is for the reason that there is in such circumstances no breach of legal or moral duty. There is nothing legally or morally wrong in the conduct of a parent who makes an arrangement for the support of his or her child by a relative or friend. To fail to meet the burden of support means to cast off that burden, to refuse to bear it, and to make it necessary that others should assume it. Mere consent to the voluntary support of a child by others, or acquiescence in such voluntary support, is not a failure within the meaning of section 1409, *supra.* Arrangements of this character which may be of advantage to the children, and to

the other parties concerned, as well, do not result in a deprivation of parental rights. The courts have so held whenever the question has arisen, and have not hesitated to reverse judgments which have deprived parents of their natural rights by reason of erroneous conclusions as to what constitutes failure to maintain children, or abandonment. (*Matter of Forrester,* 162 Cal. 493, 496 [123 P. 283] ; *In re Green,* 192 Cal. 714 [221 P. 903]. See, also, cases last above cited.) Mrs. Kelly has been separated from her daughter through misfortune, but the greatest misfortune of all, and a grave injustice as well, would have been a judgment which would have made that separation permanent. ██ The failure of the court to make a finding as to whether she had wilfully failed to maintain her daughter was not a reversible error, for the reason that a finding adverse to her upon that issue would have been without support in the evidence.

██ There is one other point to be disposed of. Ruby Leabo was appointed guardian of the person of Donna on October 31, 1944, without the giving of any notice of her petition, or order prescribing notice. The mother's address in Denver was stated in the petition. Section 1441 of the Probate Code provides that before making the appointment of a guardian, "such notice as the court or a judge thereof deems reasonable must be given to the person having the care of the minor and to such relative of the minor residing in the state as the court or judge deems proper. In all cases notice must be given to the parents of the minor or proof made to the court that their addresses are unknown, or that, for any other reason, such notice cannot be given." This requirement of notice to the parents is jurisdictional. The order of appointment was void and was subject to be set aside by the court at any time. It was, in fact, the duty of the court to vacate the order upon the mother's petition and to hear the matter de novo. (*In re Dahnke,* 64 Cal.App. 555 [222 P. 381] ; *In re Pryor,* 68 Cal.App. 312 [229 P. 60].) It may also be mentioned that Ruby Leabo's first petition to be appointed guardian of the estate came on for hearing with the Margaret E. Kelly petition, and with Ruby Leabo's counterpetition, and was disposed of by the judgment of Judge Clark.

The judgments are affirmed.

Desmond, J., and Wood, J., concurred.