[L. A. No. 22493. In Bank. May 28, 1954.]

HIROKO KAWAKITA HAYASHI et al., Appellants, v. W. H. LORENZ et al., Respondents.

Morris Lavine for Appellant.

Horton & Knox, Harry W. Horton and R. L. Knox, Jr., for Respondents.

TRAYNOR, J.—Plaintiffs appeal from an order of dismissal entered on defendants' motion to dismiss for failure to prosecute. (Code Civ. Proc., § 583.)

Plaintiffs' complaint was filed on March 4, 1947. An amended complaint, filed on December 11, 1947, alleged that defendants had entered into a conspiracy to defraud plaintiffs of certain real property and that in pursuit of this conspiracy defendant Lorenz procured his appointment as guardian of the estates of plaintiffs Hiroko and Tomoya, and, as guardian, subsequently sold the property constituting the guardianship estate to defendant Rashid for much less than its market value. It was also alleged that defendants fraudulently procured the sale to defendant Rashid of certain property belonging to plaintiff Yasabura. (For a statement of the circumstances surrounding these events, see *Guardianship of Kawakita, ante,* p. 840 [271 P.2d 13].) Plaintiffs' amended complaint ended with a prayer for compensatory and exemplary damages, or, alternatively, for damages and for an order declaring the guardian's deed null and void and directing defendant Rashid to convey the property to plaintiffs Hiroko and Tomoya.

Defendants answered plaintiffs' amended complaint denying the alleged conspiracy to defraud, denying that each of the orders in the guardianship proceedings was void on its face as plaintiffs claimed, and asserting that plaintiff Tomoya had no standing in court either because he was a citizen of Japan (with which the United States was then still at war) or because he was civilly dead as a result of his conviction of treason and sentence to death.

On February 18, 1952, plaintiff noticed a motion to set the cause for trial before March 4, 1952. Defendants filed a motion to dismiss the action for failure to prosecute on February 26. Both motions were heard on February 28, and, on the following day, an order was made granting the motion to dismiss. This appeal followed.

Section 583 of the Code of Civil Procedure provides, in part, ''The court may in its discretion dismiss any action for want of prosecution on motion of the defendant and after due notice to the plaintiff, whenever plaintiff has failed for two years after action is filed to bring such action to trial . . . '' The discretion is that of the trial court and it will be disturbed only in cases of manifest abuse. (*Hillsdale Builders Supply Co.* v. *Eichler*, 109 Cal.App.2d 117, 118 [240 P.2d 343], and cases there cited.) Plaintiffs have not shown any such abuse of discretion.

Plaintiffs contend that because defendants, in their answer, raised certain issues as to the validity of the orders in the guardianship proceeding (*Guardianship of Kawakita, ante,* p. 840 [271 P.2d 13]) and as to Tomoya's standing in court, they could not go to trial until there was a final determination in the guardianship proceedings and in the case of *United States* v. *Kawakita,* 96 F.Supp. 824. (Subsequently affirmed on appeal, 343 U.S. 717 [72 S.Ct. 950, 96 L.Ed. 1249], reh. den., 344 U.S. 850 [73 S.Ct. 5, 97 L.Ed. 660], motion to modify death sentence denied, 108 F.Supp. 627.) Both in their amended complaint and in their motion to vacate the orders in the guardianship proceeding, plaintiffs took the position that each of the orders therein was void on its face. In such a case they could be attacked and their invalidity shown at any time. ''It is well settled that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion at any time after its entry, by the court which rendered the judgment or made the order. [Citations.]'' (*In re Dahnke,* 64 Cal.App. 555, 560 [222 P. 381]; see also *Olivera* v. *Grace,* 19 Cal.2d 570, 573-574 [122 P.2d 564, 140 A.L.R. 1328]; *Estate of Estrem,* 16 Cal.2d 563, 571 [107 P.2d 36]; *Luckenbach* v. *Krempel,* 188 Cal. 175, 177 [204 P. 591]; *People* v. *Davis,* 143 Cal. 673, 675-676 [77 P. 651]; *Winrod* v. *Wolters,* 141 Cal. 399, 402-403 [74 P. 1037]; *Kreiss* v. *Hotaling,* 96 Cal. 617, 622-623 [31 P. 740]; *People* v. *City of Barnes City,* 105 Cal.App. 618, 622-623 [288 P. 442].) The proceedings instituted by Hiroko's and Tomoya's motions to vacate the orders in the guardianship matter therefore provide no excuse for plaintiffs' failure to bring this action to trial.

The issue raised as to Tomoya's standing in court is likewise unavailing. His judgment of conviction was entered on October 5, 1948, less than two years after the present action

was commenced. It determined the issue of citizenship. ■ The civil disabilities attendant upon his conviction and sentence to death must be determined by the laws of the United States, under which he was convicted. (*Beck* v. *Downey*, 191 F.2d 150, 153, judgment vacated on other grounds, 343 U.S. 912 [72 S.Ct. 646, 96 L.Ed. 1328], and reinstated, 198 F.2d 626; *Panko* v. *Endicott Johnson Corp.*, 24 F.Supp. 678, 682.) Tomoya was convicted and sentenced to death in the federal courts for a federal offense. There is no provision for civil death in the law of the United States, as there is in the law of California. ■ Civil death statutes are penal, and are strictly construed. ■ Sections 2599-2604 of the Penal Code define the "civil death" of persons sentenced to death or life imprisonment, but these statutes are not applicable to Tomoya's conviction and sentence to death. It cannot be presumed that the Legislature intended sections 2599-2604 of the Penal Code to apply to every convict, regardless of where he was convicted and imprisoned. The statutes themselves rebut any such presumption. ■ The power given to the Adult Authority to restore certain civil rights of persons declared civilly dead, and the provision of section 2601 of the Penal Code which states that a "person sentenced to imprisonment *in the State Prison* for life is thereafter deemed civilly dead," (italics added) indicate that California's civil death statutes are intended to apply only to persons convicted in the courts of this state and imprisoned in the prisons of this state.

■ Moreover, the record shows that Tomoya was absent from the state at the time the alleged fraudulent conspiracy was formed and implemented. He had therefore, no first-hand knowledge of the facts on which plaintiffs' causes of action were based. Plaintiffs have thus made no showing that Tomoya's presence was necessary at the trial, or that the trial could not have been had in his absence.

■ Plaintiffs also contend that the proceedings in the probate court and in the case of *United States* v. *Kawakita, supra,* constituted a partial trial of this action and thus suspended the operation of section 583 of the Code of Civil Procedure. This contention is without merit. The issues involved in those proceedings either could have been determined, in so far as was necessary, in the present action or were of no consequence in relation to this action. The cases cited by plaintiffs in support of their argument (*City of Los Angeles*

v. *Superior Court,* 15 Cal.2d 16 [98 P.2d 207] ; *Mercantile Investment Co.* v. *Superior Court,* 218 Cal. 770 [25 P.2d 12]) were cases in which some proceeding had been conducted in the same action in which the dismissal was sought. *Guardianship of Kawakita, supra,* and *United States* v. *Kawakita, supra,* however, were entirely separate actions in different courts, and the proceedings therein could not constitute a partial trial of the present action.

Plaintiffs' final contention, that the appeals in *Guardianship of Kawakita, ante,* p. 840 [271 P.2d 13], and *United States* v. *Kawakita, supra,* made it impossible to bring this action to trial and necessarily suspended the operation of section 583 of the Code of Civil Procedure during the time consumed on appeal, is predicated upon the validity of their contention that the proceedings in these cases constituted a partial trial of the present action, and therefore cannot be sustained.

Shenk, J., Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

When the trial court based its dismissal of plaintiffs' action on the provisions of section 583 of the Code of Civil Procedure, it was guilty of a gross abuse of discretion which should not in fairness and justice be upheld by this court. Section 583 provides, in part, that ''The court may in its discretion dismiss any action for want of prosecution on motion of the defendant and after due notice to the plaintiff, whenever plaintiff has failed for two years after action is filed to bring such action to trial.'' The wording of this section makes clear that it was meant to apply only to those actions which a plaintiff could and should have prosecuted without delay.

Where there is good reason for an extended delay, where a party is unable for good reason to proceed to trial or where it would be futile or impracticable to prosecute the action promptly, an exception to the dismissal provisions of section 583 is recognized. (*Christin* v. *Superior Court,* 9 Cal.2d 526 [71 P.2d 205, 112 A.L.R. 1153] ; *Judson* v. *Superior Court,* 21 Cal.2d 11 [129 P.2d 361] ; *Bank of America* v. *Superior Court,* 84 Cal.App.2d 34 [189 P.2d 799].) It is equally well recognized in Califorina that the time, during which for all practical purposes going to trial would be impossible due to

impracticability or otherwise, is to be excluded in determining whether an action has been brought to trial within the time limit provisions of section 583 of the Code of Civil Procedure. (*Pacific Greyhound Lines* v. *Superior Court*, 28 Cal.2d 61 [168 P.2d 665]; *Westphal* v. *Westphal*, 61 Cal.App.2d 544 [143 P.2d 405].)

In the case at bar the defenses, which were set up by defendants in their answer to plaintiffs' complaint, made it highly impracticable, if not impossible, to proceed to trial until a final determination was had in two other proceedings. As one affirmative defense, defendants alleged that plaintiff Tomoya Kawakita could not maintain the action because he was an enemy alien and since the causes of action were joint, all plaintiffs were therefore barred. In another separate defense defendants alleged that certain matters had already been conclusively determined in a prior probate proceeding. The final answers to both these defenses were, as I shall point out, dependent upon the final outcome of two other proceedings. In view of this, it would have been futile for plaintiffs to have attempted to proceed with the trial until a final determination was had in these other two matters.

First, let us consider the effect of the defense that plaintiff Tomoya was an enemy alien. As a separate and affirmative defense defendants alleged "That plaintiff Tomoya Kawakita was not at the commencement of this action, and is not now a citizen of the United States, but was and is an alien and a citizen of Japan; that at the commencement of this action the government of Japan was and still is at war with and is an enemy of the United States; that by reason of the foregoing and the further fact that the first cause of action of said Amended Complaint is joint and not severable, the cause of action is barred." (A similar defense was set out against the second cause of action.) Such a defense would no doubt have been effective if Tomoya were actually an alien and a citizen of Japan since at this time a state of war still existed between the United States and Japan.

It is well established that the rights of enemy aliens to prosecute actions are, in most respects, suspended during time of war. In considering section 7(b) of the Trading with the Enemy Act, which provides that ". . . nothing in this act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the

war. . . ." the United States Supreme Court has stated that "This provision was inserted in the act in the light of the principle recognized by Congress and by this court that war suspends the right of enemy plaintiffs to prosecute actions in our courts." (*Ex parte Colonna*, 314 U.S. 510 [62 S.Ct. 373, 86 L.Ed. 379]; see, also, *Taylor* v. *Albion Lbr. Co.*, 176 Cal. 347 [168 P. 348, L.R.A. 1918B 185]; *Borovitz* v. *American Hard Rubber Co.*, 287 F. 368; *H. P. Drewry, S.A.R.L.* v. *Onassis*, 266 App.Div. 292 [42 N.Y.S.2d 74].)

Looking to the facts of the case at bar we find that prior to the filing of defendants' answer, on November 8, 1949, plaintiff Tomoya had, on September 2, 1948, been convicted of treason and found to have been a citizen of the United States. An appeal was thereafter taken and one of the principal issues was whether or not Tomoya was an enemy alien or a citizen of the United States. Due to the appeals, a final determination of Tomoya's citizenship was not had until June 2, 1952. At that time the United States Supreme Court, in a close four to three decision, held that Tomoya was, and at all times had been, a citizen of this country. (*Kawakita* v. *United States*, 343 U.S. 717 [72 S.Ct. 950, 96 L.Ed. 1249].) It thus becomes apparent that the question as to Tomoya's citizenship, which defendants sought to raise in their answer, was in constant litigation in the federal courts from a time prior to defendants' answer until June of 1952, yet the instant case was dismissed on February 29, 1952. It would have been highly impracticable and futile for plaintiff Tomoya to have attempted to litigate his alleged citizenship in the California courts when the question was then currently a highly contested issue in the federal courts.

The second defense which necessitated a delay in bringing the instant action to trial, was the allegation by defendants that plaintiffs had no cause of action for fraud or conspiracy to defraud due to the findings of the prior probate order. Such a defense pointed out that the probate order of May 22. 1942, provided that the property involved was not worth more than $6,000; that the property was sold for $6,000; and that Tomoya and Hiroko had no interest in the property since said property was encumbered for more than $24,000. This order which defendants rely on was the order permitting and approving the sale of the real property of the guardianship.

In their effort to avoid this defense, based on the prior order, plaintiffs moved to have the probate court set aside

and vacate the letters of guardianship and all subsequent orders. Such was the most reasonable and expedient method of settling the validity of the guardianship once and for all. As stated in *In re Dahnke,* 64 Cal.App. 555, 560 [222 P. 381], "It is well settled that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion, at any time after its entry, by the court which rendered the judgment or made the order. (*People* v. *Greene,* 74 Cal. 400 [16 P. 197, 5 Am.St.Rep. 448] ; *People* v. *Temple,* 103 Cal. [447] 453 [37 P. 414].)"

In the instant case proper notice as required by statute (Prob. Code, § 1441) had not been given to the parents of the alleged minors involved. Such a defect was apparent from the face of the record of the guardianship proceedings and an appointment made without the required notice is a nullity. (*In re Dahnke, supra,* 64 Cal.App. 555; *Guardianship of Kerns,* 74 Cal.App.2d 862 [169 P.2d 975] ; *Guardianship of Van Loan,* 142 Cal. 423 [76 P. 37].) It is well established that the notice required by Probate Court, section 1441, is a condition precedent to the valid exercise of the power to appoint a guardian and is jurisdictional. (*In re Dahnke, supra,* 64 Cal.App. 555.) In view of this, the most effective and practical method of attacking such jurisdiction was by a motion in the probate court to revoke the letters of guardianship which were not properly granted.

It could be argued that the guardianship proceedings were subject to collateral attack in the instant proceeding and that it was unnecessary to institute the motion to revoke in the probate court; however, such an argument loses sight of the practicality and expediency of the procedure followed by plaintiffs. If plaintiffs had attempted a collateral attack of the probate order they would have encountered almost insurmountable difficulties: Such difficulties were adequately pointed out in *Asher* v. *Yorba,* 125 Cal. 513, 515 [58 P. 137] when this court stated that "It must be borne in mind that this appellant is here making a collateral attack upon a judgment decreeing a sale of the minor's land, and, consequently, all the rules of law hedging about the validity of such decrees are to be invoked against her. The order of sale in this case is presumed to have been a valid one. It behooves her to show to the contrary. The burden is upon her to show a void sale. The absence of evidence in this record showing the jurisdictional facts may be taken as evidence against her. If the

posting of these notices was not performed according to the requirements of the statute, it was for her to show that fact. If the evidence does not show how it was done, and when it was done, it will be presumed that it was done in the proper manner and at the proper time. Of course, we are not even intimating that appellant would be allowed to go outside of the record of the proceedings and by extrinsic evidence attack the validity of the guardian's sale.'' Thus it is apparent that a collateral attack on the probate proceedings would have been a very difficult if not an impossible task.

On the other hand, as stated in *In re Dahnke, supra,* 64 Cal.App. 555, 561, ''A motion to vacate a judgment or an order is a direct and not a collateral attack; and on such motion, if it be made in time, any facts going to show the invalidity of the judgment or order may be presented—facts *dehors* the record as well as facts appearing on the face of the judgment-roll or record. (*Norton* v. *Atchison etc. R. R. Co., supra* [97 Cal. 388 (30 P. 585, 32 P. 452, 33 Am.St.Rep. 198)]; *Estate of Eikerenkotter, supra* [126 Cal. 54 (58 P. 370)].)'' The court in the Dahnke case also noted that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity may be set aside at any time by the court which rendered the order. It therefore becomes apparent that, as a practical matter, the best and most effective method of attacking the guardianship was in the probate court as plaintiffs sought to do. Until the validity of the guardianship orders were finally determined it would have been practically futile, if not impossible, to have proceeded to trial in the instant action. (See *Westphal* v. *Westphal, supra,* 61 Cal.App.2d 544; *Pacific Greyhound Lines* v. *Superior Court, supra,* 28 Cal.2d 61.)

In view of the fact that it would have been impossible and futile, from a practical standpoint, to proceed to trial until the foregoing issues, pleaded by defendants in their defense, were finally determined, the case should be removed from the effect of Code of Civil Procedure, section 583. It is well established that the *time during which it is impractical or impossible to bring a case to trial should be excluded in determining whether a case has been brought to trial within the time limit provisions of section 583. (Christin* v. *Superior Court, supra,* 9 Cal.2d 526; *Westphal* v. *Westphal, supra,* 61 Cal.App.2d 544; *Pacific Greyhound Lines* v. *Superior Court, supra,* 28 Cal.2d 61.) When the trial court failed to recognize these well recognized exceptions to section 583 of the Code of Civil Pro-

cedure, and dismissed plaintiffs' action, it committed a gross abuse of discretion which should not be sanctioned by this court.

For these reasons I would reverse the judgment of dismissal.

Appellants' petition for a rehearing was denied June 23, 1954. Carter, J., was of the opinion that the petition should be granted.