[L. A. No. 22281. In Bank. May 28, 1954.]

Guardianship of the Persons and Estates of HIROKO KAWAKITA et al., Minors. HIROKO KAWAKITA et al., Appellants, v. W. H. LORENZ, as Guardian, etc., Respondent.

Morris Lavine for Appellants.

Horton & Knox, Harry W. Horton and R. L. Knox, Jr., for Respondent.

TRAYNOR, J.—Hiroko Kawakita and her brother, Tomoya, are native-born children of Yasabura Kawakita, an alien Japanese, who was appointed guardian of his children and of their estates in 1923. In 1927, Yasabura furnished the funds to purchase a lot in Calexico on which there was a two-story brick business building. The purchase price of the property was $33,000, and $7,000 in improvements were

added during the next ten years. Title was taken in the names of the children as tenants in common, subject to a trust deed in favor of Yasabura. Hiroko attained her majority on October 19, 1937, and Tomoya attained his on September 26, 1942. In 1938, Yasabura filed an account of his guardianship. The court approved the account, but refused to close the guardianship of Hiroko and her estate because of the deficit due to Yasabura on the trust deed. In 1939, Tomoya went to Japan where he remained throughout the war and until his return to the United States in 1946. Yasabura was sent out of the state to an internment camp for Japanese aliens in February, 1942. On March 10, 1942, he executed a general power of attorney to his daughter, Hiroko, who was subsequently removed to a relocation center in Arizona in May, 1942. In an instrument dated ''April, 1942'' Yasabura resigned his guardianship. This instrument was not filed until May 4, 1942. On April 8, 1942, W. H. Lorenz, respondent herein, petitioned the Superior Court of Imperial County to be appointed guardian of the estates of Hiroko and Tomoya, who were described in the petition as ''minors'' owning the building mentioned above. The petition related that Yasabura had been acting as guardian, but that he had been evacuated from Imperial County and was ''therefore unable to look after this estate.'' The petition also stated that respondent was ''familiar with the rental of properties and [was] willing to act as the guardian of the property belonging to the minors.'' The nomination filed with respondent's petition related that the ''minors'' owned the property described in the petition, and that they nominated respondent as their guardian. The nomination concluded with the following statement: ''I, Hiroko Kawakita am now 25 years of age and Tomoya Kawakita is now 20 years of age.'' The nomination was signed by Hiroko only. Neither the petition nor the nomination was verified. Notice of hearing on the petition was posted at the court house, but the record is bare of any evidence that personal notice was given to the parents of the ''minors'' or that a showing was made that such notice could not be given. Nor does it appear that notice was given to any person having the custody of the ''minors'' or their estates. The printed form used for the affidavit of notice recites only the posting of notice at the court house; the parts relating to personal notice are crossed out. After a hearing, of which there is no transcript, the court entered an order on April 27, 1942, reciting that ''due proof having been made

. . . and the court finding that notice of the hearing of said petition has been given ~~to~~ _____ _ as required by law;'' and ordering that respondent be appointed guardian ''upon *his* giving a *surety* bond . . ., and taking and subscribing the oath required by law.'' His oath was dated April 30, 1942. On the same day, respondent filed a verified petition, in which he described himself as the ''duly appointed, qualified and acting guardian of the estate of the above named minors,'' asking that an order be made permitting him as guardian to sell the property of the guardianship estate. His letters of guardianship were not issued until five days later, May 5, 1942. Notice of hearing on the petition for permission to sell was posted at the court house and published three times in a local newspaper. The record does not reveal any notice of a place where offers or bids would be received. (Prob. Code, §§ 1534, 780, 782.) Further, there is no record that an appraisal was made. (Prob. Code, § 784.) The only statement of the value of the property that appears in the record was that made by respondent in his petition. He alleged therein that the rental value of the property was not sufficient to pay taxes, upkeep, and the interest on the debt of $13,206.25, secured by the trust deed to Yasabura; that the property was not worth more than $6,000; and that he had received an offer in that amount. It was further alleged in the petition that Hiroko had attained her majority ''but that there will be no money to go into the guardianship from the sale of this property for the reason that the said property is encumbered with a trust deed in favor of Y. Kawakita . . . and that therefore the wards have no equity whatever, and [respondent] therefore thinks that it will be for the best interests of this estate that the building be sold and the estate closed.'' The petition for permission to sell was subsequently granted, and a sale was consummated to John T. Rashid for $6,000. Since the amount due on the trust deed was greater than the sale price, the guardianship estate received nothing from the sale. The $6,000 less the costs of the sale, were deposited in the ''blocked'' bank account of Yasabura, pursuant to a license issued by the United States Department of the Treasury. The guardian's annual reports for 1943 and 1944 were approved, but the estate was not closed until October 2, 1946, when the court discharged the guardian and ordered the assets of the estate—$329.68—distributed to the wards.

Tomoya returned to the United States in 1946. He was thereafter indicted for and convicted of treason. Judgment

and sentence of death were imposed on October 8, 1948. (*United States* v. *Kawakita,* 96 F.Supp. 824; aff'd 343 U.S. 717 [72 S.Ct. 950, 96 L.Ed. 1249]; reh. den., 344 U.S. 850 [73 S.Ct. 5, 97 L.Ed. 660]; motion to modify death sentence denied, 108 F.Supp. 627; death sentence commuted to life imprisonment by Presidential Proclamation of October 29, 1953.)

In March 1947, Hiroko, Tomoya, and Yasabura filed an action in the Superior Court of Imperial County against respondent and John T. Rashid, the vendee of the guardian's sale, to quiet title to the property sold by the guardian and to recover damages for fraud, or, alternatively, to declare the guardian's deed null and void and to require Rashid to convey the property to the plaintiffs Hiroko and Tomoya. This action was dismissed on motion of the defendants on February 28, 1952, for lack of prosecution. The dismissal has been affirmed. (*Post,* p. 848 [271 P.2d 18].)

The present proceedings were instituted in the Superior Court of Imperial County on October 14, 1950, when Hiroko and Tomoya moved to "vacate, annul and declare void the Order for Appointment of W. H. Lorenz as [their] Guardian and all subsequent orders based thereon on the ground that the court was without jurisdiction to entertain the aforesaid guardianship proceedings and to make any of the orders in this proceeding . . ." After a hearing, the court made an order denying Tomoya's motions, denying Hiroko's motion to annul the appointment of respondent as guardian, and granting Hiroko's motion to declare void all orders in the guardianship proceedings subsequent to the appointment of the guardian "in particular the order concerning the sale of real property . . ."

Hiroko noticed an appeal from that part of the order denying her motion to annul the appointment of respondent as her guardian and from each and every part of the order denying the motions of Tomoya. She contends that the order appointing the guardian is void on its face because it appears from the judgment roll that she was not a minor, that the statutory requirements of notice were not complied with, and that the appointment was not "necessary and convenient." Respondent contends, on the other hand, that the order appointing him guardian is not void on its face and that Tomoya cannot challenge the denial of his motions on the grounds that he did not appeal and that he is now civilly dead. We have concluded that the order appealed from is not an appealable

order and that therefore we have no jurisdiction to review these contentions in this proceeding.

■ Section 1630 of the Probate Code provides that "An appeal may be taken to the Supreme Court from an order granting or revoking letters of guardianship; settling an account of a guardian; instructing or directing a guardian; or refusing to make any order heretofore mentioned in this section." With the possible exception of an order granting a new trial (see *Estate of Armstrong,* 8 Cal.2d 204, 206 [64 P.2d 1093]), it is settled that only those orders mentioned in section 1630 are appealable in guardianship proceedings. (*Guardianship of Leach,* 29 Cal.2d 535, 539 [176 P.2d 369]; *Estate of Kay,* 30 Cal.2d 215, 217 [181 P.2d 1]; see also *Kramer* v. *Superior Court,* 36 Cal.2d 159, 161 [222 P.2d 874]; *Fredrickson* v. *Superior Court,* 38 Cal.2d 593, 596-597 [241 P.2d 541].) ■ That section does not mention an appeal from an order either granting or denying a motion to vacate or annul a prior order of the court. Accordingly, an appeal may be taken from such an order only if in legal effect it is tantamount to one or more of the orders listed. (See *Lyon* v. *Goss,* 19 Cal.2d 659, 670 [123 P.2d 11]; *Estate of Estrem,* 16 Cal.2d 563, 566 [107 P.2d 36].) If respondent's letters of guardianship were still in effect it might reasonably be contended that the court's order refusing to vacate and annul the order appointing him guardian was tantamount to an order refusing to revoke letters of guardianship. (See *In re Dahnke,* 64 Cal.App. 555, 559 [222 P. 381]; *Estate of Estrem, supra,* 16 Cal.2d 563, 566; *cf., Guardianship of Brazeal,* 117 Cal.App.2d 59, 60 [254 P.2d 886].) ■ In the present case, however, respondent was discharged as guardian approximately four years before this proceeding was commenced, and accordingly his letters are no longer in effect and could not now be revoked by any order to vacate and annul. Nor is the order appealed from equivalent to any of the other orders listed in section 1630.

The appeal is dismissed.

Shenk, J., Edmonds, J., Schauer, J., and Spence J., concurred.

CARTER, J.—I dissent.

The majority has seen fit to dismiss this appeal upon the sole ground that the order appealed from is not an appealable order. Such a decision is not only erroneous and misleading

but is based upon an inadequate analysis of section 1630 of the Probate Code.

It is well recognized in California that the right of appeal in probate matters is purely statutory and exists only in those cases in which it is given by statute. (*Estate of Funkenstein,* 170 Cal. 594 [150 P. 987]; *In re Walkerly,* 94 Cal. 352 [29 P. 719].) It is equally well recognized that the right to appeal in guardianship matters is governed exclusively by Probate Code, section 1630. (*Guardianship of Leach,* 29 Cal.2d 535 [176 P.2d 369].)

In the case at bar the appellants appealed from an order denying a motion "to vacate, annul and declare void" the appointment of a guardian. Since such an order has to do with guardianship proceedings it can only be appealed from if provision for such appeal has been made by section 1630 of the Probate Code. It therefore becomes apparent that the appealability or nonappealability of the instant order is dependent upon the provisions of section 1630 of the Probate Code.

Section 1630 of the Probate Code provides that "An appeal may be taken to the Supreme Court from an *order* granting or *revoking letters of guardianship*; settling an account of a guardian; instructing or directing a guardian; *or refusing to make any order heretofore mentioned* in this section." (Emphasis added.) This section makes it unquestionably clear that an appeal may be taken from an order granting or revoking letters of guardianship and that an appeal may also be taken from a refusal to make either of these orders. Thus an order revoking letters of guardianship is an appealable order. Likewise an order refusing to revoke letters of guardianship is also an appealable order. We therefore find that section 1630 of the Probate Code makes express provision for the appeal of an order refusing to revoke letters of guardianship. Not only does section 1630 expressly provide for the appeal of orders refusing to revoke letters of guardianship but the appeal of such orders has long been the accepted practice in California. (*In re Morhoff,* 179 Cal. 595 [178 P. 294]; *Matter of Schwartz,* 171 Cal. 633 [154 P. 304]; *Guardianship of Rapp,* 54 Cal.App.2d 461 [129 P.2d 130].) The rule in California is well established that "An appeal may be taken from a judgment or order of the superior court granting or refusing to grant, revoking or refusing to revoke, letters of guardianship; . . ." (13 Cal.Jur. 167.)

Having determined that an order refusing to revoke letters of guardianship is an appealable order, we must now determine whether in the instant case the order in question was one which refused to revoke letters of guardianship. Looking to appellants' motion of October 14, 1950, we find that they sought to "vacate, annul and declare void the order of this court [probate court] made in this proceeding, on May 5, 1942, appointing W. H. Lorenz [respondent] a guardian of the estates of said Hiroko Kawakita and Tomoya Kawakita, . . ." This order of May 5, 1942, which appellants sought to vacate was entitled "LETTERS OF GUARDIANSHIP" and it provided among other things that "W. H. Lorenz is hereby appointed guardian of" the estate of Hiroko and Tomoya Kawakita. This means that appellants sought to vacate the order of May 5, 1942, by which letters of guardianship were granted to respondent. The court's refusal to make such an order, vacating the order of May 5, 1942, was clearly a refusal to "vacate, annul and declare void" the letters of guardianship. If an order refusing to "vacate, annul and declare void" is the same thing as an order refusing to "revoke" then the instant order refusing to vacate the letters of guardianship is without question an appealable order within the provisions of section 1630 of the Probate Code.

In comparing the word "revoke" with the word "vacate" we find that the courts of this country have frequently held the two terms to be synonymous (*People ex rel. Filippone* v. *Martin,* 46 N.Y.S.2d 234, 235). As for comparing the word "revoke" with the word "annul" we find that to revoke is "to annul by recalling or taking back; . . . An annulling; a cancellation. . . ." Webster's New International Dictionary, second ed., 1933, unabridged.) In Black's Law Dictionary (third ed., 1933) it is stated that "revoke" means "To call back; to recall; to annul an act by calling or taking it back." The courts of this country have been in accord with such definitions. (*Braun Estate,* 358 Pa. 271 [56 A.2d 201]; *Mayor, etc., of Houston* v. *Houston City St. Ry. Co.,* 83 Tex. 548 [19 S.W. 127]; *Ford* v. *Greenawalt,* 292 Ill. 121 [126 N.E. 555].) It is equally well established that the word "revoke" means to "declare void." (*O'Hagen* v. *Kracke,* 165 Misc. 4 [300 N.Y.S. 351, 362]; *In re Will of Barrie,* 393 Ill. 111 [65 N.E.2d 433]; *Commissioner of Internal Revenue* v. *Holmes' Estate,* 148 F.2d 740, 742.) In California our courts have frequently used such terms as "revoke," "vacate" and "set aside" interchangeably. (*Guardianship of Van Loan,* 142 Cal. 423 [76 P.

37]; *In re Morhoff, supra,* 179 Cal. 595; *Estate of Eikerenkotter,* 126 Cal. 54 [58 P. 370]; *In re Dahnke,* 64 Cal.App. 555 [222 P. 381].) It thus becomes apparent that a motion to "vacate, annul and declare void" is the equivalent of a motion to "revoke."

In the case at bar the appellants sought to "vacate, annul and declare void" the letters of guardianship of respondent. This was in effect a motion to revoke such letters. The order of the probate court refusing to revoke such letters of guardianship was clearly and unequivocally an appealable order within the provisions of section 1630 of the Probate Code.

The net result is that the order appealed from is an appealable order and it is incumbent upon this court to decide the case upon its merits. The mere fact that the guardian was previously discharged is immaterial since the order to revoke and vacate because of an absence of jurisdiction does more than merely discharge a guardian, it goes back and cancels all proceedings based upon such appointment. It is well established that an order of the court which, as here, is void on its face can be set aside at any time. (*In re Dahnke, supra,* 64 Cal.App. 555; *People* v. *Greene,* 74 Cal. 400 [16 P. 197, 5 Am.St.Rep. 448]; *Estate of Estrem,* 16 Cal.2d 563 [107 P.2d 36].)

In the case at bar the lower court committed a patent and obvious error in refusing to revoke the letters of guardianship since the record of the order of appointment was void on its face. The valid appointment of a guardian for a minor requires that notice of the appointment proceedings be given to the parents of the minor, or alternatively, proof must be made that such notice cannot be given. It is also requisite that the appointment be "necessary or convenient." (Prob. Code, §§ 1440, 1441.) In the instant case no notice was given to the parents of Hiroko and Tomoya and an appointment made without such notice is a nullity. (*In re Dahnke, supra,* 64 Cal.App. 555; *Guardianship of Kerns,* 74 Cal.App.2d 862 [169 P.2d 975]; *Guardianship of Van Loan, supra,* 142 Cal. 423.) The record also indicates that the appointment was neither necessary nor convenient since at the time the letters of guardianship were issued the record before the court showed that the property of the estate was worth less than $6,000; that liabilities amounted to more than $13,000; and that therefore Hiroko and Tomoya had "no equity whatever" in the property which was to constitute the guardianship estate. The law in California is well established that an order

appointing a guardian of the person and estate of a minor may be vacated at any time, if the record of the appointment discloses affirmatively upon its face that the order was void for want of jurisdiction of the court to make it. (*Estate of Eikerenkotter, supra,* 126 Cal. 54.) It thus becomes apparent that the order which appellants sought to revoke was a nullity and should have been set aside.

For these reasons I would reverse the order appealed from with directions to enter an order setting aside the order appointing respondent guardian of these petitioners and all subsequent orders based thereon.

Appellants' petition for a rehearing was denied June 23, 1954. Carter, J., was of the opinion that the petition should be granted.