[S. F. No. 6892. In Bank.—December 27, 1915.]

In the Matter of the Guardianship of ROSA GERTRUDE SCHWARTZ, a Minor. ADOLPH SCHWARTZ, Appellant, AMALIA SCHWARTZ, Respondent.

PARENT AND CHILD—GUARDIANSHIP—PETITION BY FATHER TO REVOKE LETTERS — FINDINGS — ABANDONMENT—UNFITNESS OF FATHER.—In this proceeding by a father to revoke letters of guardianship of the person of his minor child which had been issued to a third person, the evidence does not sustain the findings of the court, made upon denying the petition for revocation, to the effect that the father had abandoned the child prior to the appointment of the guardian, and that he was not a fit and proper person to have its custody.

ID.—OFFER BY FATHER TO RELINQUISH RIGHT TO CHILD FOR PECUNIARY CONSIDERATION.—The mere fact that the father of the minor, during the course of his efforts to get its possession, intimated to those having the custody of the child that he would consent to allow it to remain where it was if paid a certain amount of money, does not establish his unfitness to have its care and custody.

ID.—BENEFIT TO FINANCIAL INTERESTS OF MINOR.—The fact that the financial interests of a minor would be promoted if it were left with its' relatives rather than given over to its father, is not recognized by the law as a cause for depriving the father of the custody of his own child.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing to revoke letters of guardianship of the person of a minor. Bradley V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

Olin L. Berry, for Appellant.

George Appell, and C. H. McConaughy, for Respondent.

SHAW, J.—Adolph Schwartz appeals from an order denying his petition for the revocation of letters of guardianship of Rosa Gertrude Schwartz, his minor child, issued to Amalia Schwartz on March 16, 1911, and for the termination of said guardianship.

The child has no property of any description. The said guardian was appointed solely upon the ground that the father had abandoned the child and that it needed the care and attention of some fit and proper person. In denying the petition of the father for revocation the court made findings to the effect that the father had abandoned the child prior to the appointment of Amalia Schwartz as guardian, and that he was not a fit or proper person to have its custody. We are of the opinion that the evidence does not justify either finding. The following is a statement of the facts shown by the evidence, relating to abandonment:

Amalia Schwartz is the aunt of the child's father and mother, who were cousins. She was the sister of the father of Adolph Schwartz and of the mother of Sophie Schwartz, his wife, who was the daughter of Adam Stern. The wife of Stern was for many years in delicate health and Amalia Schwartz lived as a member of the family of Stern and was the housekeeper. She had raised Sophie Schwartz, the wife of the appellant. Schwartz and his wife at the time of her confinement were living at the house of Adam Stern in Los Angeles. The child was born on December 4, 1906. Its mother died on December 18, 1906. Schwartz and Stern were both barbers by occupation. Upon the death of the child's mother, Schwartz, having no home or place to keep it, asked his aunt, Amalia Schwartz, to take the child and raise it, which she then agreed to do. Thereupon he left the child with her. Shortly after making this arrangement Schwartz left the house of his father-in-law and never afterward lived there as a member of the family, although he visited the family several times a year. From 1906 to 1911 Schwartz lived in various places. He went first to Jamestown, Virginia, and then to Europe on a visit to his relatives. He also worked in Los Angeles and in Nevada, and in the beginning of 1910

he settled in Seattle and there married his present wife, by whom he has a child which was about two years old at the time of the making of the order appealed from. About the 1st of January, 1911, Mrs. Stern, Schwartz' mother-in-law, died. Upon learning of her death, Schwartz wrote to Adam Stern suggesting that he would take the child to his own home and away from the home of Stern. Up to that period the relations between the parties appear to have been entirely harmonious. His suggestion that he wanted to take the child himself was met with objections, and from that time forward all of his relatives manifested a disposition to resist his purpose. Stern wrote to Schwartz advising him not to attempt to take the child away, that it would make trouble. Thereupon, Schwartz went to Los Angeles to get the child, and failing to find it, caused a writ of *habeas corpus* to issue for its custody. This writ was served upon Stern, but not upon Amalia Schwartz. The child had been taken to San Francisco by Amalia Schwartz and was at that time in the home of Calvin C. Eib, its uncle by marriage. Failing in this proceeding, Schwartz returned to Seattle. In March, 1911, without notice to Schwartz, Amalia Schwartz obtained the appointment as guardian in the superior court of San Francisco, as above stated, for the purpose of retaining custody of the child. In November, 1911, Calvin C. Eib and his wife, without the consent of Schwartz, obtained an order of the superior court of San Francisco whereby they adopted the said child, Amalia Schwartz consenting thereto as its guardian. In May, 1912, Schwartz moved to San Francisco and then discovered that the child was in the custody of Eib and wife. He then again resorted to a writ of *habeas corpus* to get the child and was defeated by the order of adoption and the guardianship, of both of which he then heard for the first time. In October, 1912, he applied to the superior court to set aside the order of adoption aforesaid, and in May, 1913, the said order was vacated accordingly. In September, 1913, he filed the present application for the revocation of the letters and termination of guardianship.

It is clear from this conduct of Schwartz that he never intended to abandon the child. Having arranged with his aunt for its care, it cannot be said that his conduct in allowing her to keep it was an abandonment. From all that appears in the evidence it was for the best interests of the child that it

should be left with the aunt, at least until Schwartz married. There is some conflict in the evidence as to whether he contributed anything to the child's support. On the other hand, it does not appear that any demand was ever made upon him for assistance of that kind. Under the circumstances, his failure to pay for its maintenance did not constitute an abandonment. The evidence in insufficient to justify the finding that the child was abandoned by the father.

With respect to the father's fitness to have the custody and care of the child, the evidence to sustain the finding is equally deficient. He appears to be an industrious person of good habits. He has a comfortable home into which he can take the child. His present wife is desirous of having the child and is willing to care for it. The finding that he is unfit to care for the child seems to be based entirely upon the fact of his making divers demands upon Stern and Eib for money as a condition of his consent that the child might be kept away from him. These occurred after the controversy arose, and in the course of his negotiations and efforts to get possession of his child. In February, 1911, he said to Charles Stern that he had had bad luck that year and had been in the hospital, and that if he could get five hundred dollars he would consent to allow the child to remain where it was, and made a like proposal to Adam Stern, asking for one thousand dollars. He was referred by Adam Stern to Mr. Eib. Thereupon, he began the proceeding in *habeas corpus*, which, as before stated, failed of its object. In May, 1912, in a conversation with Eib in San Francisco, he again intimated that if one thousand dollars were paid he would not press his claims for the child. No other conduct of his was proven tending to show unfitness for the care of the child. The appellant himself denies that he made these requests as a condition of giving up the child. Whatever may have been the reason for his conduct in this particular, we do not think it is sufficient to justify the finding that he is not a fit and proper person to have the care and custody of his child. The court below appears to have made its decision as it did because of its belief that the financial interests of the child would be promoted if it were left with its relatives rather than given over to its father. The law does not recognize this as a cause for depriving the father of the custody of his own child. No sufficient reason appears why the father should

not be allowed to take care of and rear his child, as he apparently desires to do. The father is competent and fit to have its custody, and being willing and able to care for it he is entitled thereto. (Civ. Code, sec. 197.) The guardianship is no longer necessary, and should be terminated. We think the court below erred in refusing the relief asked by the father.

The order is reversed.

Sloss, J., Lorigan, J., Melvin, J., and Lawlor, J., concurred.

ANGELLOTTI, C. J., Dissenting.—I dissent, being of the opinion after full consideration of the record, that the evidence sufficiently supports the finding of abandonment.