Filed 1/27/25; Certified for Publication 2/19/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHELLE ARZATE et al., | B336829 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 21STCV23497) |
| v. | |
| ACE AMERICAN INSURANCE COMPANY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kenneth R. Freeman, Judge.  Reversed.

O'Melveny and Myers, Susannah K. Howard, and Jason M. Zarrow for Defendant and Appellant.

Shenoi Koes, Allan Shenoi, Daniel Koes, and Benjamin Caryan for Plaintiffs and Respondents.

————————————

In this wage-and-hour class action suit, the trial court granted the defendant's motion to compel arbitration, but later reversed course and lifted the stay of litigation after neither party took any action to initiate arbitration. The arbitration agreements at issue require any person having "employment related legal claims" to "submit them to . . . arbitration." They also require the "party who wants to start the [a]rbitration [p]rocedure" to begin the process by filing a demand for arbitration. The trial court concluded that the obligation to commence arbitration lay with the defendant, ACE American Insurance Company (ACE), which had filed the motion to compel arbitration, rather than with the plaintiffs, a group of ACE employees who had consistently resisted arbitration. In the court's view, ACE waived its right to arbitrate the dispute by failing to commence the arbitration.

ACE appeals from the trial court's order, arguing the court misinterpreted the contractual language. We agree. The plaintiffs expressly agreed to "submit" their claims to arbitration. In context, the agreements' language concerning the "party who wants to start the [a]rbitration [p]rocedure" refers to the party that wants to assert a legal claim governed by the arbitration agreements. In this case, that is the plaintiffs, not ACE. Thus, the plaintiffs were required to initiate arbitration, and ACE did not breach the arbitration agreements or waive its right to arbitration by failing to submit the plaintiffs' claims for them. In addition, we disagree with the plaintiffs' contention that the trial court's order is not appealable and that we must dismiss the appeal.

## FACTS AND PROCEEDINGS BELOW

On June 18, 2021, plaintiffs Michelle Arzate, Anthony Esquivel, Charleston Princeton, James Kang, and David Block filed a class action complaint alleging that ACE misclassified them as exempt employees (see Lab. Code, § 515) and failed to provide them with the benefits required for nonexempt employees under state law, such as overtime pay and meal and rest periods (see *id.*, §§ 226.7, 510, 512). In an amended complaint, the plaintiffs added claims on an individual and representative basis under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et. seq.) for the same alleged violations.

ACE moved to compel arbitration of the case on the basis of arbitration agreements that the plaintiffs had signed as a condition of their employment. The agreements consisted of three parts. First, the plaintiffs had signed a document titled "Arbitration Agreement," which stated: "I agree that, in the event I have any employment related legal claims, I will submit them to final and binding neutral third-party arbitration, in accordance with the ACE Employment Dispute Arbitration Policy recited above, which is made a part of this agreement. I understand that this agreement means that I cannot bring any employment related claim in court and that I waive my right to a jury trial for such claims."[1]

---

[1] The language in the arbitration agreements varied slightly among the plaintiffs, who signed the agreements at different times and worked for different ACE subsidiaries. Neither party claims these differences are meaningful, however, and for the sake of convenience, we quote from Arzate's agreement.

The second document, the ACE employment dispute arbitration policy, explained the scope of arbitration in more detail and referred to a third document, "the ACE Employment Dispute Arbitration Rules and Procedures, which are part of this policy." The arbitration policy stated that the arbitration rules and procedures "are based on and generally follow the American Arbitration Association (AAA) Employment Arbitration Rules and Mediation Procedures."

The ACE employment dispute arbitration rules and procedures set forth rules for initiating arbitration. We have italicized the portions most relevant to this appeal: "*A party who wants to start the [a]rbitration [p]rocedure should submit a demand within the time periods required by applicable law.* An employee's demand letter must be sent by certified mail to ACE Employee Relations . . . . If ACE is demanding arbitration, it will send its demand letter . . . by certified mail to the employee's last known home address.

"ACE will pay all costs of arbitration in those instances in which it is the party demanding arbitration. In the event an employee demands arbitration, the employee must also send with the demand letter a check or money order for $200 made payable to the [AAA]. The $200.00 sent by the employee will be used to pay a part of the administrative fees charged by the [AAA], the organization that will be providing arbitration services. The remaining fees charged by AAA will be paid by ACE. *In the case of a court ordered arbitration, the demand for arbitration must be filed in accordance with these rules and procedures within thirty (30) calendar days from the date of entry of the court order or such other time period as determined by the court.*"

The trial court found that the case fell within the scope of the arbitration agreements and, on March 14, 2023, granted the motion to compel and stayed the case pending the outcome of arbitration.[2]  The court's order did not address who was to commence the arbitration.  The court ordered the parties "to submit a joint statement by September 8, 2023, confirming that an arbitrator has been selected and notifying the [c]ourt of the arbitration hearing date and the date of anticipated completion." The plaintiffs filed a petition for a writ of mandate in this court challenging the trial court's order, which we summarily denied on July 19, 2023 (*Arzate v. Superior Court*, No. B328586), followed by a petition for review in the Supreme Court, which was denied on September 20, 2023 (*Arzate v. Superior Court*, No. S281211).

On August 25, 2023, while their petition remained pending before the Supreme Court, the plaintiffs filed a motion in the trial court to lift the stay in the case.  The plaintiffs argued that ACE was required to initiate the arbitration process, and that by failing to do so within the agreement's 30-day time period, ACE had waived its right to arbitration.  On February 2, 2024, the trial court agreed with the plaintiffs' assessment and granted the motion, finding that ACE's inaction "was inconsistent with its right to arbitrate."

In reaching this decision, the trial court relied on the language from ACE's arbitration rules and procedures requiring the "party who wants to start the [a]rbitration [p]rocedure [to]

---

[2] The sole exception was for the representative PAGA claim, which the court stayed pending the outcome of individual arbitration.  (See *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1123-1124.)

5

submit a demand within the time periods required by applicable law," and stating that, "[i]n the case of a court ordered arbitration, the demand for arbitration must be filed in accordance with these rules and procedures within thirty (30) calendar days from the date of entry of the court order." The court reasoned that "[w]hile [the p]laintiffs are the parties who filed the instant wage-and-hour complaint and seek relief, they have heavily contested any requirement to arbitrate these claims. They never 'wanted' or 'demanded' to initiate arbitration, within the meaning of the agreement and governing rules; in fact, they opposed [ACE]'s demand. It was incumbent on [ACE], following the [c]ourt's order granting their motion, to commence the process. Because it took no action within 30 days of the March 14, 2023 [r]uling and [o]rder, [ACE] was in material breach." The court recognized that ACE might have believed it was improper to commence arbitration while writ proceedings challenging the court's order compelling arbitration remained pending, but this made no difference because ACE "still never commenced the arbitration procedure after the Supreme Court's September 20, 2023 order denying review."

## DISCUSSION

### A.    The Trial Court's Order Is Appealable

The plaintiffs argue that we must dismiss the appeal because the trial court's order lifting the stay and deeming ACE's right to arbitration waived is not appealable. Although ACE's arbitration rules and procedures provide that "[a]rbitration . . . will be governed by the Federal Arbitration Act" (FAA; 9 U.S.C. § 1 et seq.), the plaintiffs contend that California law governs procedural issues such as appealability, and that the trial court's order is not appealable under state law. We need not decide

6

which law applies because both state and federal law allow for an appeal from the trial court's order.

Code of Civil Procedure section 1294,[3] subdivision (a) states that "[a]n order dismissing or denying a petition to compel arbitration" is appealable, but there is no provision addressing the appealability of an order like the one in this case, where the trial court deemed arbitration waived after having previously granted a motion to compel arbitration.  Because "the right of appeal is wholly statutory in origin" (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 109), the plaintiffs argue that the trial court's order is not appealable.

We disagree.  The trial court's order differed from an order denying a motion to compel arbitration only in its timing.  By lifting the stay after granting ACE's motion to compel, the trial court left ACE in the same position as if it had denied the motion to compel in the first place.  "California courts have concluded orders that are the 'functional equivalent' of denying a petition to compel arbitration are appealable under section 1294, subdivision (a)." (*Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222, 236, review granted Aug. 21, 2024, S285696.)

The plaintiffs argue we should disavow the functional equivalent doctrine in light of recent case law holding that "the state policy ' "favoring" ' arbitration, like the federal policy, 'is about treating arbitration contracts like all others, not about fostering arbitration.' " (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 580, quoting *Morgan v. Sundance, Inc.*

___

[3] Unless otherwise specified, subsequent statutory references are to the Code of Civil Procedure.

(2022) 596 U.S. 411, 418 [142 S.Ct. 1708, 212 L.Ed.2d 753].)  Or, in other words, "a court must hold a party to its arbitration contract just as the court would to any other kind.  But a court may not devise novel rules to favor arbitration over litigation." (*Morgan v. Sundance, Inc.*, *supra*, at p. 418.)  In the plaintiffs' view, the functional equivalent doctrine violates this rule by treating orders concerning arbitration agreements as appealable where other orders would not be.

Once again, we are not persuaded.  The functional equivalent doctrine does not create a special exception for cases involving arbitration agreements, but rather is an application of the general rule that "an appeal may be taken from . . . an order" not specified in a statute as appealable "if in legal effect it is tantamount to one or more of the orders listed."  (*In re Guardianship of Hiroko Kawakita* (1954) 42 Cal.2d 840, 844; see also Civ. Code, § 3528 ["The law respects form less than substance"].)  Thus, in *State ex rel. Dept. of Pesticide Regulation v. Pet Food Express* (2008) 165 Cal.App.4th 841, the court held that an order enforcing an administrative subpoena is appealable because it "is tantamount to a superior court judgment in mandamus which, with limited exceptions, is appealable under" statute.  (*Id.* at p. 851.)  Similarly, under the " 'death knell' " doctrine, an order denying the certification of a class is appealable even though no statute says so because "the denial of class certification is 'tantamount to a dismissal of the action as to all members of the class other than plaintiff,' " and is in essence a final judgment as to all potential class members apart from the named plaintiff.  (*Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547, quoting *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699.)  To disregard the functional

equivalent doctrine here would in effect single out appeals of arbitration orders for special disfavor, a result inconsistent with *Quach*.

To the extent federal law governs, the trial court's order is also appealable under federal law. As the United States Supreme Court has explained, "[s]ection 3 of the . . . FAA . . . entitles litigants in federal court to a stay of any action that is 'referable to arbitration under an agreement in writing.' [(]9 U.S.C. § 3.[)] Section 16(a)(1)(A) [of the FAA], in turn, allows an appeal from 'an order . . . refusing a stay of any action under section 3.' " (*Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 625 [129 S.Ct. 1896, 173 L.Ed.2d 832].) The plaintiffs do not deny that the trial court's order in this case is an order refusing a stay under section 3 of the FAA, but they contend that such an order is appealable only if arbitration is already pending. We find no support for this limitation in either the text of the statute or in case law. To the contrary, the Supreme Court has interpreted appealability under section 16(a)(1)(A) of the FAA broadly: "By that provision's clear and unambiguous terms, any litigant who asks for a stay under [section] 3 [of the FAA] is entitled to an immediate appeal from denial of that motion— regardless of whether the litigant is in fact eligible for a stay." (*Arthur Andersen LLP v. Carlisle, supra*, at p. 627.)

## B. ACE Was Not Required to Initiate Arbitration and Thus Did Not Breach the Arbitration Agreements or Waive its Right to Arbitrate

ACE argues that the trial court erred by finding it breached the arbitration agreements and waived its right to arbitration by failing to initiate arbitration within 30 days of the court's order compelling arbitration. We agree. The arbitration agreements

9

here required the plaintiffs, not ACE, to file a demand for arbitration.

"We review an order denying a motion to compel arbitration based on findings of fact for substantial evidence." (*Villareal v. LAD-T, LLC* (2022) 84 Cal.App.5th 446, 456.) In this case, however, the relevant "facts are undisputed" (*ibid.*): the trial court granted ACE's motion to compel arbitration, but neither side took any action to initiate arbitration until the trial court issued its order lifting the stay and finding that ACE had waived its right to arbitrate. In this situation, "we review the denial of a motion to compel arbitration de novo. [Citations.] Likewise, we independently review the order if the trial court's denial rests solely on a question of law. [Citations.]" (*Ibid.*) "An arbitration agreement is governed by contract law. It is construed like other contracts to give effect to the intention of the parties and the ordinary rules of contract interpretation apply. [Citation.]" (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 764.)

Although the parties argue at length about other issues,[4] at heart, the outcome of this appeal depends on the answer to a

---

[4] For example, ACE contends that, in the absence of an agreement to the contrary, there is a "default rule" that "the party asserting the claim subject to arbitration is obligated to file the arbitration demand." The plaintiffs deny that such a rule exists under California law. In addition, the plaintiffs argue that a party's failure to initiate arbitration in a timely manner is analogous to its failure to pay arbitration fees or costs within 30 days of their due date (see § 1281.98), which gives the opposing party "a right to withdraw from arbitration and go to court." (*Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073,

single question: under the arbitration agreements, which party was required to initiate arbitration?

The plaintiffs argue that the answer to that question is ACE. In making their argument, they, like the trial court, rely largely on two provisions of the arbitration rules and procedures portion of the arbitration agreements. First, "[a] party who wants to start the [a]rbitration [p]rocedure should submit a demand within the time periods required by applicable law." Second, "[i]n the case of a court ordered arbitration, the demand for arbitration must be filed in accordance with these rules and procedures within . . . 30 . . . calendar days from the date of entry of the court order or such other time period as determined by the court."

The plaintiffs argue that ACE is the only party that "want[ed]" arbitration. ACE filed a motion to compel arbitration, whereas the plaintiffs always preferred to remain in court and resisted arbitration. The plaintiffs conclude that ACE was thus required to submit a demand within 30 days of the court order compelling arbitration. When it failed to do so, it breached the arbitration agreement and waived any right to arbitration.

_____

1079.) ACE responds that that statute is "irrelevant" and "lack[s] any application here" as it did not fail to pay any billed arbitration fees. We need not and do not resolve these collateral issues. Similarly, the plaintiffs' argument that ACE violated the trial court's order compelling arbitration by failing to initiate arbitration presupposes that ACE had such an obligation under the parties' agreement, as the court's order enforced the parties' agreement and did not separately identify who was to file with the arbitration provider.

11

The plaintiffs' interpretation errs by considering these two provisions in isolation from other contractual language. When construing an arbitration agreement, just as with any other contract, " 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' (Civ. Code, § 1641.) ' "A court must . . . not use a 'disjointed, single-paragraph, strict construction approach' [citation]." ' [Citation.]" (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 186.) In this case, the language regarding the party that "wants" or "demands" arbitration occurs in the context of an agreement by the plaintiffs, "in the event [they] have any employment related legal claims, [that they] will submit them to final and binding neutral third-party arbitration." ACE's arbitration policy, which was incorporated in the arbitration agreements, made the point even clearer, stating that "arbitration by a neutral third party is the required and final means for the resolution of any employment-related legal claim not resolved by the internal dispute resolution processes," and that the policy "prevents both ACE and the employee from going to court over employment-related disputes."

In this context, the phrase "want[ing] to start the [a]rbitration [p]rocedure" cannot refer to a preference for arbitration over litigation because the parties already ruled out litigation as an option in any dispute governed by the arbitration agreements. Instead, where the only option for addressing a dispute is in arbitration, "want[ing] to start the [a]rbitration [p]rocedure" means a desire to seek redress for an employment related legal claim. In other words, it must refer to an action by a plaintiff. ACE arguably could have used different language in the arbitration rules and procedures to underscore this point, but

the document appears to be written with a minimal amount of legalese for the benefit of employees without legal training. Read in the context of the entire agreement, the colloquial language shows that the plaintiffs were the party that "want[ed] . . . [a]rbitration," and that they were required to file a demand to initiate the process given their agreement that they would "submit" their employment-related claims to arbitration.

Additional support for ACE's position comes from the employment dispute arbitration policy, which states that the arbitration "[r]ules and [p]rocedures are based on and generally follow the [AAA] Employment Arbitration Rules and Mediation Procedures." The employment arbitration rules (AAA Rules), of which we take judicial notice,[5] provide that arbitration may be initiated either jointly or by an "initiating party," which the rules refer to as the " '[c]laimant.' " (AAA Rules, rule 4.b.i.) The claimant must file a written notice or " '[d]emand' " that includes "a brief statement of the nature of the dispute; the amount in controversy, if any; [and] *the remedy sought*." (*Id.*, rule 4.b.i.1, italics added.) The other party, which the rules describe as the " '[r]espondent' " (see *id.*, rule 4.b.i.2), may file an answer (*id.*, rule 4.b.ii) and, if applicable, a counterclaim seeking relief from the claimant (*id.*, rule 4.b.iii.1). We interpret ACE's arbitration rules, which are based on the AAA rules, to use the term "demand" in the same way, and presuppose that the party filing a demand is seeking a remedy. As the Texas Supreme Court noted in a similar case, "[i]t would be anomalous to require the party

---

[5] The AAA rules are available at <https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf> as of January 22, 2025.

13

against whom relief is sought to present its opponent's case." (*In re Bruce Terminix Co.* (Tex. 1998) 988 S.W.2d 702, 706.) Thus, when ACE's rules and procedures require "[a] party who wants to start the [a]rbitration [p]rocedure [to] submit a demand within the time periods required by applicable law," it can only refer to the plaintiffs.[6]

The plaintiffs also claim that ACE, by failing to initiate arbitration, acted unconscionably and "effectively block[ed] every forum for redress including arbitration itself." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 124.) The plaintiffs argue that "[n]o reasonable [p]laintiff would agree to arbitration if a [d]efendant could hold hostage any outcome in arbitration by simply not *commencing* arbitration, and equally importantly, not paying the requisite fees to have arbitration progress." But nothing apart from the plaintiffs' own inaction has prevented the case from moving forward. In *OTO*, the court stated that, in the context of agreements to arbitrate disputes related to employment, " 'the unconscionability inquiry focuses on whether the arbitral scheme imposes costs and risks on a wage claimant that make the resolution of the wage dispute inaccessible and unaffordable.' " (*Ibid*.) Under ACE's arbitration rules and procedures, the only financial burden facing an aggrieved employee is to pay AAA $200 to commence arbitration (an amount less than half of the filing fee in superior court), and there is no claim the amount of

---

[6] Our interpretation of the term "demand" under the arbitration agreements and the AAA rules is separate from the question of whether a defendant may be required to initiate arbitration if it wishes the arbitrator to take action or if an arbitration agreement calls for it to do so. (See, e.g., *Lew-Williams v. Petrosian* (2024) 101 Cal.App.5th 97, 109.)

the fee is unconscionable.  "The remaining fees charged by AAA will be paid by ACE."  The reason this case has not proceeded in arbitration is that the plaintiffs have thus far declined to pursue it there.  We now make clear that it is the plaintiffs who must prosecute their case, including submitting a demand as specified in the arbitration agreements, so that it may proceed.

## DISPOSITION

The trial court's order is reversed.  Plaintiffs' motion to dismiss the appeal is denied.  ACE is awarded its costs on appeal.


WEINGART, J.


We concur:



BENDIX, Acting P. J.



M. KIM, J.


15

Filed 2/19/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHELLE ARZATE et al., | B336829 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 21STCV23497) |
| v. | |
| ACE AMERICAN INSURANCE COMPANY, | ORDER CERTIFYING FOR PUBLICATION |
| Defendant and Appellant. | |

The opinion in the above-entitled matter filed on January 27, 2025, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

WEINGART, J.          BENDIX, Acting P. J.          M. KIM, J.